Daniel R. Donahue, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued October 30, 1978, before Judges CRUMLISH, JR., MENCER and CRAIG, sitting as a panel of three.

140

 

*Richard J. Ferderdwioz,* with him *Michael Saltzburg,* for petitioner.

*Charles G. Hasson,* Assistant Attorney General, with him *Gerald Gornish,* Attorney General, for respondent.

OPINION BY JUDGE CRUMLISH, JR., April 20, 1979:

The Unemployment Compensation Board of Review (Board) affirmed a referee's decision denying to Daniel Donahue benefits on the ground of willful misconduct pursuant to Section 402(e) of the Unemployment Compensation Law[1] (Act). We affirm.

Donahue had been employed as a tack welder by Dravo Corporation (Employer). His last full day of employment before a recuperative medical leave of absence was March 23, 1976. He underwent a physical examination by Employer's doctor on June 8, 1976, but did not mention that he had consulted his family doctor the day prior regarding emotional problems. The company doctor certified Claimant physically able to return to work without limitations. Donahue reported for work the following day, but after working a few hours, requested and was given a "personal pass" without explanation to leave work. However, he then left work and reported to his union office that he was unable to work because of medical problems. A misunderstanding is contended by Donahue: The union instructed him to contact his personal physician who,

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §802(e).

in turn, was to notify the company doctor. Claimant believed the union would contact Employer and that his personal physician would contact Employer's doctor. On June 18, 1976, he was notified by certified mail that he was discharged for failing to report to work for five continuous days without explanation, this being a violation of the labor management agreement. Employer later received a letter from Donahue's personal physician on August 23, 1976, asserting that Donahue was unable to work because he was suffering a depressive neurosis. On August 24, 1976, Claimant was not reinstated and instituted a grievance.

Section 510 of the Act, 43 P.S. §830, provides the limitation of our scope of review to questions of law and, absent fraud, to a determination of whether or not the findings of fact are supported by the evidence. An employee's action leading to his dismissal rises to the level of willful misconduct and a question of law is subject to our review. *Williams v. Unemployment Compensation Board of Review,* 32 Pa. Commonwealth Ct. 641, 380 A.2d 932 (1977).

Donahue's appeal asserts a lack of substantial evidence to sustain the Board's finding that his failure to comply with company policy constitutes willful misconduct. The question of whether he notified Employer of his impending absence is one of fact, while its sufficiency is one of law. *Unemployment Compensation Board of Review v. Blouse,* 23 Pa. Commonwealth Ct. 66, 350 A.2d 220 (1976). Donahue argues that he reported his absences in good faith to his union without any conscious wrongdoing and hence the employer failed to meet his burden of establishing that Claimant was guilty of willful misconduct.

It is well settled that absenteeism in itself generally does not constitute willful misconduct, *Roebuck v. Unemployment Compensation Board of Review,* 33 Pa. Commonwealth Ct. 491, 382 A.2d 482 (1978), but fail-

ure to report the reason for absence in a manner established by company policy is conduct which can constitute sufficient willful misconduct to preclude the benefits of Section 402(e) since that behavior is a deliberate disregard of the standards of behavior an employer can rightfully expect of an employee. *Williams v. Unemployment Compensation Board of Review,* 34 Pa. Commonwealth Ct. 640, 383 A.2d 963 (1978). Here, Employer's representative explained the procedure required of an employee. He must communicate the request to either his general forman or the company industrial relations office. In the record is a copy of the labor-management agreement which details the consequences of failing to properly request time off. It reads:

> Employees shall lose all seniority rights in all job classifications in which they have such seniority rights if . . . (e) they are absent from work without explanation for a period of five (5) work days. Where there is good cause for such absence, the reason for the absence may be explained after the end of the five (5) days without loss of seniority.

The testimony further discloses that neither Donahue nor anyone on his behalf advised Employer of the approximate length of time during which he would be unable to resume his employment nor was Employer informed of the precise nature of the illness until August 23, 1976, at which time the company received Donahue's personal physician's report, two months after the discharge notice. In the interim no attempt was made to provide Employer with medical documentation. We hold that Donahue's notice of illness given to the union and to his personal physician was insufficient as a matter of law. On the instant record, we find substantial evidence to support Board's finding that Donahue's failure to utilize known proper procedures

to inform Employer of his illness constitutes willful misconduct.

Accordingly, we

ORDER

AND NOW, this 20th day of April, 1979, the order of the Unemployment Compensation Board of Review, Decision No. B-145376, dated May 18, 1977, is hereby affirmed.