James T. STEVINSON,
Plaintiff-Respondent,

v.

LABOR AND INDUSTRIAL RELATIONS
COMMISSION OF MISSOURI, DIVI-
SION OF EMPLOYMENT SECURITY,
and Bill Johnson, Mike Johnson and
Scott Johnson, d/b/a Big J Tank Truck
Service, Defendants-Appellants.

No. 12916.

Missouri Court of Appeals,
Southern District,
Division Two.

July 6, 1983.

Roger W. Owensby, Republic, for plain-
tiff-respondent.

Alan J. Downs, Jefferson City, for de-
fendant-appellant Labor and Indus. Rela-
tions Com'n of Missouri.

Susan P. Haag, Jefferson City, for de-
fendant-appellant Div. of Employment Sec.

PREWITT, Judge.

Respondent was employed as a truck
driver in Oklahoma for Bill Johnson, Mike
Johnson and Scott Johnson, apparently a

partnership known as Big J Tank Truck Service. He quit the job voluntarily and thereafter filed a claim for unemployment compensation. See Chapter 288, RSMo 1978. The employer protested the claim and a deputy determined that respondent left his work voluntarily without good cause and disqualified him from benefits until he had earned wages equal to ten times his weekly benefit amount. See §§ 288.050.1(1), RSMo 1978. Respondent appealed from the deputy's determination. The appeal form asked for the reasons for the appeal and respondent said:

> "I was in violation of the weight law when I drove the loaded trucks every day. I was afraid I would break through the 5 to 8 ton bridges. The truck had too much weight on the back end and had ineffective brakes. The job made me nervous."

The Appeals Tribunal of the Division of Employment Security held a hearing "by telephone conferencing". Respondent and Bill Johnson "testified" there. The Appeals Tribunal found respondent "quit his job because he was nervous and he believed the truck he was driving was unsafe and overloaded" but denied his claim because his evidence did not show that there was anything mechanically wrong with the trucks or that they were overloaded and he did not establish that the bridges over which he drove were unsafe for the load he was carrying.

Respondent then requested the Labor and Industrial Relations Commission to review the decision of the Appeals Tribunal because:

> "I do not believe a man should have to break the law to keep a job. In performing my work I was required to break the law. The Dept. of Transportation for Oklahoma did not allow as much weight as I was required by my employer to haul. The roads were 10 ten and bridges were 5 to 10 ton. I had to haul up to 25 ton which was *against* the law. The statement that the employer made about

the hauling operation on mud roads is not true. It rained more often that 1% of the time. I was nervous in my work because I had to break the law every day in doing my work."

The application to review the decision was denied by the Labor and Industrial Relations Commission.[1] Apparently to this point respondent was proceeding without an attorney. He then secured counsel and sought judicial review. See §§ 288.200–.210, RSMo 1978. The circuit court determined that respondent had good cause attributable to his work or to his employer for leaving the job and reversed the decision of the Labor and Industrial Relations Commission.

As respondent voluntarily terminated his employment, he is qualified for benefits only if he left for good cause attributable to his work or employer, and the burden of establishing that rested on him. *Belle State Bank v. Industrial Commission, Div. of Employment Security,* 547 S.W.2d 841, 844 (Mo.App.1977). As to questions of fact, our review is limited to ascertaining whether the Commission reasonably could have made its findings and decision, viewing the evidence in the light most favorable to the award; however, as to questions of law we are not bound by its decision. Id.

Respondent testified he left the job because he "didn't feel that—that I could keep on breaking the law and—and take chances on maybe losing my license. And that's the reason I quit". The Appeals Tribunal did not find any of respondent's testimony unworthy of belief but found that he did not meet his burden of proof that operation of the truck was unsafe. An administrative agency may not arbitrarily disregard or ignore the testimony of a witness not shown to have been disbelieved by the agency and only if the agency makes a specific finding that the undisputed or unimpeached evidence is not entitled to credibility and is unworthy of belief may that

---

1. By denying respondent's application for review the decision of the Appeals Tribunal is deemed the decision of the Labor and Industrial Relations Commission for the purpose of judicial review. § 288.200.1, RSMo 1978.

evidence be disregarded. *Jennings v. Labor & Industrial Relations Commission*, 579 S.W.2d 845, 848 (Mo.App.1979); *Wilson v. Labor and Industrial Relations Commission*, 573 S.W.2d 118, 121 (Mo.App.1978). Therefore, we must consider that one of the reasons he quit was because he thought he was violating the law.

Respondent said that when the truck he drove was loaded, it was overweight on the rear axle and it exceeded the weight limit of the bridges he was required to cross. Johnson admitted that "on the rear wheels we're 500 pounds over weight. Loaded." He also acknowledged that respondent was required to drive the truck over bridges marked with a lower load limit but contended that on every bridge respondent was crossing the employer had "permits from county commissioner to cross them bridges". Those "permits", if there be such, were not introduced in evidence and made a part of the record. As we read the Oklahoma law, local authorities cannot issue permits to alter weight limits, see 47 Okla.Stat.Ann. §§ 14–101, 15–101, 15–102, and granting such permits is not within the authority of County Commissioners. See 69 Okla.Stat.Ann. § 601.

 The Oklahoma Attorney General has issued an opinion stating that exceeding the posted weight limit on a county road is a misdemeanor criminal offense and the driver or owner who exceeds the posted limit may be held liable for any damages caused to the bridge by exceeding the weight limit. Op.Okla.Atty.Gen. 82–2 (1982). While that opinion may not be entitled to any more weight than that given the opinion of any other competent attorney, see *Gershman Investment Corporation v. Danforth*, 517 S.W.2d 33, 36 (Mo. banc 1974), the opinion appears correct to us.

By violating the weight and bridge load requirements, respondent was subjecting himself to potential civil and criminal penalties. See 47 Okla.Stat.Ann., §§ 14–101, 14–113, 14–114, 14–117. We think it can scarcely be debated that where one is called upon to repeatedly violate the law that he has good cause to terminate his employment. See *Stormer v. Commonwealth of Pa., Unemployment Compensation Board of Review*, 32 Pa.Cmwlth. 220, 378 A.2d 1037, 1039 (1977). See also 81 C.J.S. Social Security § 233, p. 465.

Relying on *Contractors Supply Company v. Labor & Industrial Relations Commission*, 614 S.W.2d 563 (Mo.App.1981), and *Central Missouri Paving Company Inc. v. Labor & Industrial Relations Commission*, 575 S.W.2d 889 (Mo.App.1978), appellant contends that respondent should have made a greater effort with the employer to resolve his objections. That he made an effort was admitted by Johnson, and the employer refused to take any action. It was apparent both from that attempt and Johnson's testimony that the employer was not going to change its manner of operating the trucks.

The evidence clearly and undisputably shows as a matter of law that respondent was being required to violate Oklahoma law and that he unsuccessfully sought to remedy the situation. That gave him good cause for terminating his employment.[2]

The judgment is affirmed.

MAUS, P.J., and HOGAN, J., concur.

---

**2.** Thus, we do not decide whether respondent had proved that operation of the truck was unsafe or whether it was sufficient for him to show that he had good reason to believe, even if erroneous, that the operation was unsafe and that affected his nerves sufficiently to justify his voluntary termination. See *Jennings v. Labor & Industrial Relations Commission*, supra,

579 S.W.2d at 848 and cases there discussed. See also *Wilkes-Barre Transit Corp. v. Unemployment Compensation Board of Review*, 215 Pa.Super. 353, 257 A.2d 275 (1969), aff'd 438 Pa. 554, 265 A.2d 519 (1970); *Buckley v. Bethlehem Steel Corp.*, 31 N.Y.2d 950, 341 N.Y.S.2d 98, 293 N.E.2d 248 (1972).